IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| John and Vanessa Coker as Personal Representatives of the Estate of John Wilson Coker, III, deceased, | ) ) ) ) | C.A. No. 3:11-cv-0446-CMC |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| Fireman's Fund Insurance Company, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

Through this action, Plaintiffs, John and Vanessa Coker ("the Cokers"), seek recovery from Defendant, Fireman's Fund Insurance Company ("FFIC"), for an alleged breach of contract and bad faith refusal to pay first party insurance benefits.[1] Specifically, the Cokers allege that FFIC breached the Full Cost Replacement Coverage provision ("Replacement Cost Provision") of an insurance policy by failing to pay (or to agree to pay) an adequate amount for reconstruction or replacement of the insured dwelling which was completely destroyed by fire. *See* Dkt. No. 24-1 at 69 ("Prestige Home Premier With Added Measure" ¶ 14). The central issue in dispute is the maximum amount of coverage, beyond the otherwise applicable policy limits, available under the Replacement Cost Provision.

The matter is before the court on FFIC's motion for summary judgment as to both claims. In the alternative, FFIC seeks an order compelling the Cokers to resolve critical aspects of the dispute through an appraisal process included in the policy. For the reasons set forth below, FFIC's motion is denied.

---

[1] The named insured is deceased and the Cokers bring this action as personal representatives of the insured's estate.

**STANDARD**

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as amended December 1, 2010). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987).

**DISCUSSION**

**I.     Breach of Contract**

FFIC argues that it is entitled to summary judgment on the Cokers' claim for breach of contract because it is not obligated to make any payments under the Replacement Cost Provision until the insured actually incurs costs (beyond the otherwise applicable policy limits) to rebuild or replace the insured dwelling.[2] With one exception, the cases on which FFIC relies for this argument interpreted policy language different from that in the policy at issue in this action. Critically, the policy language addressed in those cases expressly precluded payment until the insured actually incurred additional costs.[3] Moreover, none of the cases were decided under South Carolina law.

---

[2] Without consideration of the Replacement Cost Provision, the policy limit is $555,100. This reflects the face value of the policy, increased based on an inflation guard provision. FFIC paid this amount by the end of March 2009, less than two months after the fire loss which gave rise to the claim. Thus, payment of the basic coverage under the policy is not at issue.

[3] *See*, *e.g.*, *Versai Mgmt. Corp. v. Clarendon America Ins. Co.*, 597 F.3d 729, 738 (5th Cir. 2010) (holding claim for replacement costs was properly dismissed where plaintiff had not completed the repairs and policy provided that "[u]ntil replacement has been effected the amount of liability under this Policy . . . shall be limited to actual cash value at the time of the loss"); *Bellman v. Cincinnati Ins. Co.,* 602 F. Supp. 2d 705, 707-08 (W.D.N.C. 2009) (stating, in *dicta*, that "replacement cost coverage does not take effect until the lost or damaged property is actually repaired or replaced" and quoting policy as providing that insurer "will not pay on a replacement cost basis . . . [u]ntil the lost or damaged property is actually repaired or replaced"); *Snellen v. State*

Here, the policy states only that the insured must "*agree to* . . . [r]epair or rebuild the Dwelling or Other Structure with equivalent construction" for the Replacement Cost Provision to apply. There is no express language limiting payment until after reconstruction is complete (or added expenses are incurred). Thus, the language in the policy at issue in this action does not so clearly limit the insurer's obligation to make payment for a rebuilt home (or at least to be bound to make payment if the expense is later incurred) as did the policies at issue in the cases discussed above.[4]

The one case which FFIC cites which addressed similar, if not identical, wording did not consider the critical issue as the insured, in that case, "acknowledge[d] that [the Replacement Cost Provision] requires an insured to repair, rebuild or replace his dwelling before the extended replacement cost coverage applies." *Langhorne v. Fireman's Fund Ins. Co.*, 432 F. Supp. 2d 1274, 1278-79 ( N.D. Fla. 2006). Given this concession, the court had no reason to consider whether the language requiring the insured to "agree to . . . repair or rebuild" precluded a claim for breach of contract prior to the insured incurring the actual cost. Thus, the one cited case with similar policy language provides no guidance.

The evidence proffered to date is subject to multiple interpretations ranging from a determination that neither side made adequate efforts to resolve the dispute to a determination that

---

*Farm Fire & Cas. Co.,* 675 F. Supp. 1064, 1065-67 (W.D. Ken. 1987) (holding that "[a]ctual replacement, and the incurrence of costs in that endeavor, is clearly a condition precedent" to any entitlement to payment where the policy provided, *inter alia,* for the payment of "the amount actually and necessarily spent to repair or replace the damaged building" and stated that the insurer would only pay the "cash value of the damage, up to the policy limit, until actual repair or replacement is completed").

[4] The language relating to replacement *at another location*, in contrast covers "[t]he amount you *actually spend* to replace the damaged Dwelling." Dkt. No. 24-1 at 44 ¶ 2.b. The phrasing ("spend") in this clause appears to suggest a requirement of a prior expenditure.

3

the failure is primarily attributable to one side or the other. For example, correspondence between the parties suggests FFIC asked for information on which the Cokers' expert relied in reaching his estimate. While criticizing FFIC for failing to consider the special characteristics of the home, the Cokers' representative appears to have declined to send more than the expert's estimate, resume, and photographs of *other work* he had done. Based on this evidence, the jury might conclude that the Cokers failed to fully cooperate in FFIC's investigation, leading to the failure to reach agreement on the maximum amount available under the Replacement Cost Provision.

There is also evidence from which a jury might lay the blame at FFIC's feet. This includes evidence from which a jury *might* conclude that FFIC intentionally delayed the process, failed to provide information requested by the Cokers, promised to obtain estimates which were not timely sought, or made statements suggesting greater uncertainty in process than necessary, all *for the purpose of discouraging* the Cokers from pursuing or perfecting a Replacement Cost claim.

Thus, a reasonable jury might conclude either that the evidence supports finding that the Cokers failed to cooperate in investigating the claim or that FFIC frustrated their ability to obtain benefits under the Replacement Cost Provision. Of course, it is also possible that a reasonable jury would find that the errors on both sides amounted to nothing more than innocent lapses or were the result of miscommunications. In short, the evidence is susceptible to multiple interpretations and the court cannot, at this stage, find that FFIC is entitled to judgment as a matter of law.

For the reasons set forth above, the court finds genuine issues of material fact preclude summary judgment on the Cokers' claim for breach of contract. The court, therefore, denies FFIC's motion as to this claim.

**II.     Bad Faith Failure to Pay First Party Insurance Benefits**

FFIC's argument for summary judgment on the bad faith claim rests primarily on an argument that it is not in breach of the insurance contract, which is a prerequisite to recovery on the bad faith claim. For reasons explained above, the court rejects the underlying premise and, consequently, denies the motion for summary judgment as to this claim.

## III.    Appraisal

FFIC argues, in the alternative, that the Cokers should be compelled to participate in the appraisal process provided for in the policy and that this action should be dismissed (or stayed pending completion of that process). *See* Dkt. No. 24-1 at 45 (Appraisal provision). For purposes of this order, the court assumes without deciding that such a provision should be enforced under the same standards as are applied to arbitration provisions. *See, e.g.*, *Patten Grading & Paving, Inc. v. Skanska United States Bldg., Inc.*, 380 F.3d 200, 206 (4th Cir. 2004) (pivotal question in determining whether a party has waived a right to arbitration is "whether the party objecting to arbitration has suffered actual prejudice"); *Brownyard v. Maryland Cas. Co.*, 868 F. Supp. 123, 127 (D.S.C. 1994)(to ascertain the presence of prejudice, "the court must evaluate considerations of an equitable nature; the test is one of reasonableness, and the court must consider the situation of the parties, the nature of the transaction, and the facts of the particular case").

Applying those standards, the court concludes that any right to invoke the appraisal process was waived in the six months between when this action was filed and when the demand was first made on August 30, 2011. Clearly, both sides were aware well before this action was filed that the essence of the already lengthy dispute related to valuation of a loss. FFIC had, moreover, twice suggested to the Cokers or their representative that this procedure was available and appropriate. FFIC did not, however, invoke the appraisal process either before or within a short period after this action was filed. Instead, it proceeded with discovery, making its demand for appraisal on the last

5

day of the fact-discovery period.[5] Under these circumstances the court finds FFIC waived its right to invoke the appraisal process.

## CONCLUSION

For the reasons set forth above, Defendant FFIC's motion for summary judgment or, in the alternative, to compel an appraisal is denied.

IT IS SO ORDERED.

                                              s/ Cameron McGowan Currie
                                              CAMERON MCGOWAN CURRIE
                                              UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
October 31, 2011

---

[5] FFIC suggests that it only realized the true nature of the action during the Cokers' depositions, thus excusing the delay. While the complaint may seek broader relief, it is clear that the valuation dispute lies at its heart. Thus, this argument is not supported. In any event, the Cokers were deposed on July 19, 2011. The demand was made six weeks later.

6